## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **Nathan Levi Esquerra**, <br> 18210 North 56 Lane <br> Glendale, AZ  85308, <br><br> **on behalf of himself and all others** <br> **similarly situated,** <br><br>                **Plaintiff,** <br>     v. <br><br> **APPLIANCES COMPONENTS** <br> **COMPANIES, SPA** <br> Consorziale 13 - loc. Comina <br> 33170 Pordenone, Italy; <br><br> **ACC USA LLC** <br> 113 Jetplex Circle, Suite B1 <br> Madison, AL  35758; <br><br> **DANFOSS A/S** <br> Nordborgvej 81 <br> 6430 Nordborg, Denmark; <br><br> **DANFOSS, INC.** <br> 7941 Corporate Drive <br> Baltimore, MD  21236; <br><br> **DANFOSS COMMERCIAL** <br> **COMPRESSORS, LTD.** <br> 1775 Mac Leod Drive <br> Lawrenceville, GA  30043; <br><br> **DANFOSS SCROLL** <br> **TECHNOLOGIES LLC.** <br> 1 Scroll Drive <br> Arkadelphia, AR  71923; <br><br> **DANFOSS TURBOCOR** <br> **COMPRESSORS, INC.** <br> 1769 E. Paul Dirac Drive <br> Tallahassee, FL  32310; | **CIVIL ACTION NO._____** <br><br><br><br> **COMPLAINT** <br> <u>**CLASS ACTION**</u> <br><br> **JURY TRIAL DEMANDED** |

| | |
|---|---|
| **PANASONIC CORPORATION**<br>1006 Kadoma<br>Kadoma City, Osaka, Japan;<br><br>**PANASONIC CORPORATION OF NORTH AMERICA**<br>1 Panasonic Way<br>Secaucus, NJ  07094;<br><br>**TECUMSEH COMPRESSOR COMPANY**<br>1136 Oak Valley Drive<br>Ann Arbor, MI  48104;<br><br>**TECUMSEH DO BRASIL, LTDA**<br>Rua Cel. Jose Augusto<br>De Oliveira Sales, 478<br>Vl. Izabel, San Carlos, 13565-900, Brasil;<br><br>**TECUMSEH DO BRASIL USA, LLC**<br>100 E Patterson St<br>Tecumseh, MI  49286;<br><br>**TECUMSEH PRODUCTS CO.**<br>1136 Oak Valley Drive<br>Ann Arbor, MI  48104;<br><br>**WHIRLPOOL CORPORATION**<br>2000 N. M-63<br>Benton Harbor, MI  49022;<br><br>**WHIRLPOOL S.A.**<br>Av. Das Nacoes Unidas 12995, 32 Andar<br>Sao Paulo,  04578-000, Brazil; and<br><br>**EMBRACO NORTH AMERICA, INC.**<br>2800 Vista Ridge Drive NE<br>Suwanee, GA  30024,<br><br>              **Defendants.** | |

Plaintiff Nathan Levi Esquerra, by and through his undersigned attorneys, bring

this action against the above-named manufacturers (the "Defendants") pursuant to the

antitrust and consumer protection laws set forth below on behalf of themselves and all

other indirect purchasers in the Classes set forth below for injunctive relief, treble

damages, and/or restitution, as well as attorneys' fees and costs, and demand a jury trial.

Upon information and belief, Plaintiff alleges as follows:

## INTRODUCTION

1.      This action arises out of a long-standing conspiracy extending from at

least January 1, 1996 through the present ("Class Period") in which Defendants and their

co-conspirators agreed to, and in fact did, artificially fix, maintain, and stabilize the

prices of and allocate customers and markets for compressors ("Compressors" as more

fully defined herein) and products containing Compressors ("Compressor Products") sold

in the United States and each of its individual states and territories.  Compressor Products

include but are not limited to:  commercial and residential refrigeration applications such

as freezers, dehumidifiers, display cases, water fountains, ice makers, vending machines;

household refrigerators and freezers; as well as commercial and residential unitary central

air conditioning systems and room air conditioners.

2.      Compressors essentially create cold air by "compressing" refrigerant gases

which later expand thereby drawing heat from the surroundings.  Compressors are the

core of Compressor Products such as domestic and commercial refrigeration products and

air-conditioning units – indeed, Compressor Products are essentially useless without

Compressors.  Compressors and Compressor Products are commodities.

3.      Compressors are extremely common and important devices.  The U.S.

Census estimated U.S. Compressor sales to be almost $2.5 billion dollars in 2002 alone.

Multiplied over the course of the Class Period, the total U.S. Compressor sales affected by Defendant's unlawful conspiracy potentially amounts to $30 billion.

4.     Despite being competitors in the manufacture of Compressors and Compressor Products, Defendants have actively and in concert conspired to artificially inflate and manipulate the prices and markets for Compressors and Compressor Products. Defendants' illicit conduct in furtherance of the conspiracy has included the exchange of sensitive information, participation in meetings in which pricing and supply was discussed and agreed to, allocation of markets, and monitoring and enforcement of their unlawful agreement.   Representing over 90% of the global market for Compressors and Compressor Products, the cartel was able to manipulate prices and thus, successful in effectuation of its conspiracy, thereby injuring Plaintiff and all other similarly-situated indirect purchasers of Compressors and Compressor Products.

5.     Defendants' conspiracy and acts in furtherance thereof are evidenced by a number of facts, including, *inter alia*, a product and industry highly conducive to collusion as well as pricing trends unlikely in a competitive market.  Most importantly however, one Defendant has openly admitted to the existence of this conspiracy and its role in it, and has applied for amnesty in multiple jurisdictions.  Antitrust authorities in the United States, the European Union, and Brazil have begun investigations into the Compressor industry, and several Defendants have admitted to being subpoenaed in the United States and/or having their offices raided or "visited" by the authorities in Europe and Brazil.  The Brazilian antitrust regulators recently stated that the conspiracy and acts in furtherance alleged herein lasted ***twelve years***.

4

6.     Defendants' unlawful conspiracy caused significant, foreseeable, and traceable harm to Plaintiff and members of the Classes.  As set forth below, increases in the cost of Compressors, which accounts for a significant percentage of the total cost for Compressor Products such as air conditioners, refrigerators, and freezers, inflated the prices paid by indirect purchasers of Compressors and Compressor Products such as Plaintiffs and Class members.  Many Defendants not only manufacture Compressors, but also Compressor Products, giving them substantial power to control pricing at every level in the chains of distribution.

7.     Demand for Compressors is inelastic, because there are no reasonable substitutes.  Additionally, Compressors are effectively commodity products and producers compete largely on price.  Defendants' unlawful conspiracy caused price increases in not only the prices of Compressors, but also an artificial increase in the price of Compressor Products, and thus injuring  Plaintiff and members of the Classes because they paid more for Compressors and Compressor Products than they would have in a competitive market.

8.     The actions of the Compressor cartel were kept secret.  The Defendants worked to ensure that the conspiracy to artificially inflate the price of compressors remained concealed from the market, and thus the existence and effect of the conspiracy were only recently discovered when Defendant Tecumseh came forward in exchange for leniency from antitrust authorities.  Tecumseh's revelation spawned the U.S., EC, and Brazilian investigations referenced above.

9.     Plaintiff brings this action on behalf of themselves and other indirect purchasers of Compressors and Compressor Products in the Classes set forth below.  As

an intended result of Defendants' unlawful conspiracy, prices for Compressors and Compressor Products in the United States were higher than competitive levels. Plaintiff and members of the proposed Classes have been injured in that they were forced to pay supra-competitive prices for Compressors and/or Compressor Products during the Class Period.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over the federal claims raised in this action pursuant to 28 U.S.C. §§ 1331 and 1337 and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

11.     This Court has supplemental subject matter jurisdiction of the pendant state law claims under 28 U.S.C. § 1367.

12.     Additionally, this Court has diversity jurisdiction over all claims raised in this matter pursuant to 28 U.S.C. § 1332(b), in that this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interests and costs, and in which some members of the proposed classes are citizens of a state different from some Defendants.

13.     Venue is proper pursuant to Sections 4 and 12 of the Clayton Act, 15 U.S.C. §§ 15, 16, 22 and 26, and 28 U.S.C. § 1391(b) and (c) because during the Class Period the Defendants resided, transacted business, were found, and/or had agents in this District, and because a substantial portion of the affected interstate trade and commerce described herein is and has been carried out in this District.

14.     Each Defendant has: (a) transacted business in the United States including in this District and Class Jurisdictions; (b) directly or indirectly sold or marketed

substantial quantities of Compressors and/or Compressor Products throughout the United

States including in this District and Class Jurisdictions; (c) had substantial aggregate

contacts with the United States as a whole including in this District and Class

Jurisdictions; and/or (d) was engaged in an illegal price-fixing conspiracy that was

directed at, and had the intended effect of causing injury to, persons and entities residing

in, located in, or doing business throughout the United States, including in this District

and Class Jurisdictions.

## INTERSTATE TRADE AND COMMERCE

15.     During the Class Period, there has been a continuous and uninterrupted

flow of transactions and shipments of Compressors and Compressor Products in interstate

commerce throughout the United States by Defendants.

16.     The unlawful activities of Defendants and their Co-Conspirators have

been within the flow of, and have had a direct, substantial and reasonably foreseeable

effect on interstate commerce throughout the United States.

## PARTIES

17.     Plaintiff Nathan Levi Esquerra is a resident of Glendale, Arizona.  During

the Class Period, Plaintiff Esquerra indirectly purchased Compressors and/or Compressor

Products from one or more of the Defendants.  Plaintiff Esquera paid a higher price than

he would have but for the violations alleged herein and was thereby injured as a result of

Defendants' illegal conduct.

18.     Defendant Appliances Components Companies SpA ("ACC SPA") is an

Italian corporation with its principal place of business in Pordenone, Italy.  During the

7

Class Period, ACC SPA marketed, sold and/or distributed Compressors and/or
Compressor Products to customers in the United States.

19.     Defendant ACC USA, LLC ("ACC USA") is a Delaware limited liability
company headquartered in Madison, Alabama.  ACC USA is a wholly owned subsidiary
of Defendant ACC SPA.  During the Class Period, ACC USA marketed, sold and/or
distributed Compressors and/or Compressor Products to customers in the United States.

20.     Defendants ACC SPA and ACC USA are herein collectively referred to as
"ACC".

21.     Defendant Danfoss A/S is a Danish corporation headquartered in
Nordborg, Denmark.  During the Class Period, Danfoss A/S marketed, sold and/or
distributed Compressors and/or Compressor Products to customers in the United States.

22.     Defendant Danfoss, Inc., also known as Danfoss North America, is a
Delaware corporation headquartered in Baltimore, Maryland.  Defendant Danfoss, Inc. is
a wholly owned subsidiary of Defendant Danfoss A/S.  During the Class Period, Danfoss
Inc. marketed, sold and/or distributed Compressors and/or Compressor Products to
customers in the United States.

23.     Defendant Danfoss Commercial Compressors, Ltd. ("Danfoss CC") is a
Delaware corporation headquartered in Lawrenceville, Georgia.  Defendant Danfoss CC
is a wholly owned subsidiary of Defendant Danfoss A/S.  During the Class Period,
Danfoss CC marketed, sold and/or distributed Compressors and/or Compressor Products
to customers in the United States.

24.     Defendant Danfoss Scroll Technologies, LLC f/k/a Scroll Technologies,
LLC, ("Danfoss ST") is a Delaware limited liability company headquartered in

Arkadelphia, Arkansas.  Danfoss ST is a wholly owned subsidiary of Defendant Danfoss
A/S.  During the Class Period, Danfoss ST marketed, sold and/or distributed
Compressors and/or Compressor Products to customers in the United States.

25.     Defendant Danfoss Turbocor Compressors, Inc. ("Danfoss Turbocor") is a
Delaware corporation headquartered in Tallahassee, Florida.  Defendant Danfoss
Turbocor is a wholly owned subsidiary of Defendant Danfoss A/S.  During the Class
Period, Danfoss Turbocor marketed, sold and/or distributed Compressors and/or
Compressor Products to customers in the United States.

26.     Defendants Danfoss A/S, Danfoss Inc., Danfoss CC, Danfoss ST, Danfoss
Turbocor, and Danfoss Compressor, LLC are herein collectively referred to as "Danfoss".

27.     Defendant Panasonic Corporation f/k/a Matsushita Electric Industrial Co.,
Ltd., ("Panasonic Corp.") is a Japanese corporation headquartered in Osaka, Japan.
During the Class Period, Panasonic Corp. marketed, sold and/or distributed Compressors
and/or Compressor Products to customers in the United States.

28.     Defendant Panasonic Corporation of North America ("Panasonic NA") is
a Delaware corporation headquartered in Secaucus, New Jersey.  Panasonic NA is a
wholly owned subsidiary of Panasonic Corp.  During the Class Period, Panasonic NA
marketed, sold and/or distributed Compressors and/or Compressor Products to customers
in the United States.

29.     Defendants Panasonic Corp. and Panasonic NA are herein collectively
referred to as "Panasonic".

30.     Defendant Tecumseh Compressor Company is a Delaware corporation
headquartered in Ann Arbor, Michigan.  During the Class Period, Tecumseh Compressor

9

Company marketed, sold and/or distributed Compressors and/or Compressor Products to customers in the United States.

31.     Defendant Tecumseh do Brasil, Ltda. ("Tecumseh Brasil") is a Brazilian corporation headquartered in Sao Carlos, Brazil.  During the Class Period, Tecumseh Brasil marketed, sold and/or distributed Compressors and/or Compressor Products to customers in the United States.

32.     Defendant Tecumseh do Brasil USA, LLC ("Tecumseh Brasil USA") is a Delaware limited liability company headquartered in Tecumseh, Michigan.  Tecumseh Brasil USA is wholly owned by Defendant Tecumseh Brasil.  During the Class Period, Tecumseh do Brasil USA marketed, sold and/or distributed Compressors and/or Compressor Products to customers in the United States.

33.     Defendant Tecumseh Products Co. ("Tecumseh Products") is a Michigan corporation headquartered in Ann Arbor, Michigan.  During the Class Period, Tecumseh Products marketed, sold and/or distributed Compressors and/or Compressor Products to customers in the United States.

34.     Defendants Tecumseh Products, Tecumseh Compressor Company, Tecumseh Brasil, and Tecumseh Brasil USA are herein collectively referred to as "Tecumseh".

35.     Defendant Whirlpool Corporation is a Delaware corporation headquartered  in Benton Harbor, Michigan.  During the Class Period, Whirlpool marketed, sold and/or distributed Compressors and/or Compressor Products to customers in the United States.

36.     Defendant Whirlpool S.A. f/k/a Embraco S.A. ("Whirlpool S.A.") is a Brazilian corporation headquartered in Joinville, Brazil.  During the Class Period, Whirlpool S.A. marketed, sold and/or distributed Compressors and/or Compressor Products to customers in the United States.

37.     Defendant Embraco North America, Inc. ("Embraco NA") is a Delaware corporation headquartered in Suwanee, Georgia.  Embraco NA is a wholly owned subsidiary of Whirlpool S.A.  During the Class Period, Embraco NA marketed, sold and/or distributed Compressors and/or Compressor Products to customers in the United States.

38.     Defendants Whirlpool Corporation, Whirlpool S.A., and Embraco NA are herein collectively referred to as "Whirlpool".

39.     Whenever in this complaint reference is made to any act, deed or transaction of any corporation or limited liability company or other entity, the allegation means that the corporation or limited liability company engaged in the act, deed or transaction by or through its officers, directors, agents, employees, shareholders or representatives while they were actively engaged in the management, direction, control or transaction of the business or affairs of the corporation or limited liability company.

40.     Defendants have and continue to act as each other's agents or joint venturers with respect their conspiracy, and any Defendant that is a subsidiary of a foreign parent acted as its parent company's agent and/or alter ego for its parents' U.S. sales of Compressors and/or Compressor products.

## CO-CONSPIRATORS

11

41.     Various other persons, firms and corporations, not named as defendants in this complaint, ("Co-Conspirators") have participated as co-conspirators with Defendants in the violations alleged herein, and performed acts and made statements in furtherance of the conspiracy.

42.     The true names and capacities, whether individual, corporate, associate, representative, or otherwise of Co-Conspirators are unknown to Plaintiff at this time. Plaintiff will amend this Complaint to allege the true names and capacities of Co-Conspirators when they become known to them.

## CLASS ACTION ALLEGATIONS

45.     Plaintiff brings this action on their own behalf and as a class action pursuant to Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following classes or subclasses (hereinafter collectively referred to as "Classes" unless otherwise noted):

(a)     **Nationwide Class:**  All persons and entities that indirectly purchased Compressors and/or Compressor Products from one or more of the Defendants in the United States at any time during the Class Period. Excluded from the Nationwide Class are all Defendants and their parent companies, subsidiaries, and affiliates; other co-conspirators; federal or state government entities, instrumentalities, subdivisions, or agencies; persons who purchased Compressors and/or Compressor Products directly; and persons who purchased Compressors and/or Compressor Products for resale.

(b)     **State-Specific Classes:**  All persons and entities that indirectly purchased Compressors and/or Compressor Products from one or more of the Defendants in the states or territories of Arizona, Arkansas, California, the District of Columbia, Florida, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Puerto Rico, Rhode Island, South Dakota, Tennessee, Vermont, West Virginia, and Wisconsin (the "Class Jurisdictions") at any time during the Class Period. Excluded from the State-Specific Classes are all Defendants and their parent companies, subsidiaries, and affiliates; other co-conspirators;

federal or state government entities, instrumentalities, subdivisions, or agencies; persons who purchased Compressors and/or Compressor Products directly; and persons who purchased Compressors and/or Compressor Products for resale.

46.     Members of these Classes, indirect purchasers of Compressors and/or Compressor products including, *inter alia*, refrigerators and/or freezers, are so numerous and geographically dispersed that joinder of all Class members would be impracticable.

47.     Plaintiff does not know the exact size of the Classes at the present time. However, due to the nature of the trade and commerce involved including the sales of Compressors and Compressor Products such as refrigerators and freezers, Plaintiff believes there to be at least thousands of Class members in each Class.

48.     Plaintiff's claims are typical of the claims of the members of the Classes. The claims arise from the same course of conduct and are based on the same legal theories. Defendants have acted on grounds generally applicable to the Classes, because Plaintiff and all members of the Classes are similarly affected by Defendants' wrongful conduct in that they paid artificially inflated prices for products purchased indirectly from Defendants or their Co-Conspirators.

49.     Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff's interests are coincident with, and not antagonistic to, those of the members of the Classes.

50.     Plaintiff has retained competent counsel experienced in class action and complex antitrust and consumer protection litigation.

51.     There are questions of law and fact common to Plaintiff and members of the Classes.  Those common questions predominate over any questions which may affect

only individual members of the Classes.  Predominant questions of law and fact common

to Plaintiff and members of the Classes include, *inter alia*:

    a.    Whether Defendants and their Co-Conspirators engaged and/or participated in a combination and/or conspiracy to raise, fix and/or maintain prices of Compressors and/or Compressor Products sold in the United States and Class Jurisdictions;

    b.    The duration and extent of the combination and/or conspiracy alleged herein;

    c.    The identity of the participants of the alleged combination and/or conspiracy;

    d.    Whether, and to what extent, Defendants and their Co-Conspirators affirmatively acted in furtherance of the alleged combination and/or conspiracy;

    e.    Whether the alleged combination and/or conspiracy violated the Sherman Act as alleged in Count I and whether Plaintiff and members of the Nationwide Class are entitled to injunctive relief;

    f.    Whether the alleged combination and/or conspiracy violated the state antitrust statutes as alleged in Count II;

    g.    Whether the alleged combination and/or conspiracy violated the state consumer protection and unfair competition statutes as alleged in Count III;

    h.    Whether Defendants unjustly enriched themselves to the detriment of the Nationwide Class, thereby entitling Plaintiff and other Class members to disgorgement of all benefits derived therefrom, as alleged in Count IV;

    i.    Whether Defendants took affirmative steps to fraudulently conceal the combination and/or conspiracy alleged herein;

    j.    The effect the combination and/or conspiracy had on the price of Compressors and Compressor Products sold in the United States and Class Jurisdictions during the Class Period;

    k.    Whether the conduct of Defendants and their Co-Conspirators, as alleged in this Complaint, caused injury to the business or property of Plaintiff and members of the Classes; and

l.      The appropriate measure of damages sustained by Plaintiff and other members of the Classes.

52.      Class action treatment is a superior method for the fair and efficient adjudication of this controversy because:

      a.      It will avoid a multiplicity of suits and consequent burden on the parties and the courts;

      b.      It would be impracticable for all members of the Classes to intervene as parties-plaintiff in this action;

      c.      It will allow numerous individuals to adjudicate their claims in a single forum simultaneously, efficiently, and without duplication of effort and expense that numerous individual actions would entail;

      d.      It will assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness or causing other undesirable results; and

      e.      It will permit the adjudication of relatively small claims by certain Class members, who could not afford to individually litigate an antitrust claim against large corporate defendants.

## FACTUAL ALLEGATIONS

### The Compressor Industry

53.      Defendants' conspiracy was facilitated by the characteristics of Compressors, Compressor Products and their respective markets.

54.      Compressors are devices used in refrigeration and air conditioning units. They compress a refrigerant gas that later expands, drawing heat away from the surroundings and producing a cooling effect necessary for Compressor Products.

55.      Compressors are manufactured for, and indeed are the operational core of, Compressor Products.  A freezer, for instance, is essentially just a Compressor and an insulated box.  For purposes of this complaint, Compressor Products include but are not

limited to: commercial and residential refrigeration applications such as freezers, dehumidifiers, display cases, water fountains, ice makers, vending machines; household refrigerators and freezers; as well as commercial and residential unitary central air conditioning systems and room air conditioners.

56.     The markets for Compressors and Compressor Products are inextricably intertwined and interdependent. Compressors have no independent utility and only have value as a component of Compressor Products. The demand for Compressors thus directly derives from the demand for such products.

57.     Compressors are largely homogenous commodities. Within certain categories, individual Compressors are readily interchangeable such that purchasers make their purchasing decisions largely based on price. For example, many Defendants' websites offer features which allow the consumer to directly compare competitors' Compressors in order to determine which compressor offered by that Defendant can be substituted for a competitor's models.

58.     The commodity-like nature of Compressors is also exemplified by the significant aftermarket for replacement Compressors in the United States. The demand in the commercial refrigeration aftermarket alone is projected to reach $6.5 billion by 2012.

59.     Demand for Compressors and Compressor Products such as refrigerators, freezers, and air conditioners is markedly inelastic. There are no substitutes for Compressors in refrigerators or air-conditioning units; nor are there any close substitutes for the refrigerators or air-conditioning units themselves.

60.     The Compressor market is largely vertically integrated. Many manufacturers of Compressors including many Defendants are also the largest producers

of Compressor Products.   These manufacturers and Defendants fulfill most of their own

Compressor needs.

61.     Defendants Whirlpool and Panasonic, for example, produce Compressors

as well as Compressor Products such as refrigerators and air conditioners in which they

use their own Compressors.

62.     The commodity-like nature of compressors and their interchangeability

create an environment that should foster intense price competition.   Thus, absent

Defendants' collusive behavior, the markets for Compressors and Compressor Products

would be highly competitive.   Defendant Whirlpool emphasizes this fact numerous times

in its 10k Filing before the Securities and Exchange Commission.   For instance,

Whirlpool states, "[e]ach of our business segments operates in a highly competitive

business environment and faces intense competition from a growing number of

competitors…"   Those competitors increase their market share through "aggressive

pric[ing]."   "If we are unable to successfully compete in this highly competitive

environment, our business and financial performance could be negatively affected."

63.     The highly concentrated supply for the Compressor industry aids the

creation and maintenance of Defendants' cartel.   The top eight manufacturers make up

98.5% of the global market share.   Defendant Whirlpool, controls 45% of the domestic

market.   In all, Defendants control a major share of the market, both globally and in the

United States.

64.     There are significant barriers to entry into the Compressors market such as

costly and lengthy start-up requirements.   These costs include the purchase of multi-

million dollar manufacturing plants and equipment, the creation and maintenance of a

skilled labor force and a distribution infrastructure, and ongoing energy and transportation costs.

65.     Defendants' collusion was also made possible, and disguised as legitimate, through membership in industry trade organizations.  For instance, Defendants and almost the entire industry are members of Heating, Air-conditioning & Refrigeration Distributors International ("HARDI"), a trade organization for the heating, ventilating, air conditioning, and refrigeration industry.

66.     Defendants Danfoss, Embraco, Panasonic and Tecumseh are also members of the Air-Conditioning, Heating and Refrigeration Institute ("AHRI"), an Arlington, Virginia-based trade association.  Both HARDI and AHRI hold regular meetings at locations throughout the United States.

67.     Defendants have unlawfully taken advantage of these factors in the creation and furtherance of their price-fixing conspiracy and have exacted enormous profits.

## International Investigations and Amnesty Applications

68.     In mid-February 2009, antitrust authorities across the globe announced investigations regarding whether the Compressor market's largest manufacturers, including Defendants, had fixed, maintained, and raised prices of Compressors and Compressor Products.

69.     The cartel's existence was brought to light when Defendant Tecumseh voluntarily disclosed the matter to U.S., Brazilian and EU authorities.  According to an internal memorandum of Tecumseh from Tecumseh's president, chairman, and CEO:

> In mid-2008 we were made aware of certain activities that appeared to have occurred in prior years that did not appear to conform to our policies

and standards of ethical conduct. Upon discovering these acts, the Company commenced an internal investigation led by independent outside counsel and directed by the Audit Committee of the Board of Directors. We also promptly brought the matter to the attention of authorities, and we have been cooperating with them in further information gathering. As a result of this action, we entered into amnesty agreements in the U.S., Brazilian and EU jurisdictions. These agreements, which are conditioned on factors that include our continued cooperation with authorities, should protect the company from governmental fines and penalties that could result if the reported conduct is found to violate applicable law in such jurisdictions.

70.     Tecumseh officially announced its cooperation with the DOJ in a press release regarding a proposed recapitalization plan, stating:

On February 12, 2009, the United States Department of Justice (the "DOJ") granted the Company conditional amnesty pursuant to the Antitrust Division's Corporate Leniency Policy, and the Company entered into an agreement with the DOJ under which the Company will not be subject to criminal prosecution with respect to the investigation, so long as the Company continues to comply with the Corporate Leniency Policy.

71.     The international investigations became public on February 17, 2009, when the Brazilian authorities conducted a series of dawn raids on the offices of a number of Compressor manufacturers, as well as the residences of current or former officers of at least two Defendant companies, in the Brazilian states of Sao Paulo and Santa Catarina.

72.     According to a Brazilian report, "[t]he initial investigation shows that companies involved had agreed, through their managers, to fix price increases and also exchanged commercially sensitive information, harming free competition and consumers."  The report noted that Defendants had been exchanging confidential information for *over 12 years*.

73.     In coordination with the Brazilian authorities, the EC also conducted raids of Defendants' offices for potential violations of EC antitrust rules in Denmark,

Germany, and Italy.  The EC acknowledged on February 18, that "on 17 February 2009, Commission officials carried out unannounced inspections of the premises of producers of compressors… in several Member States.  The Commission has reason to believe that the companies concerned may have violated EC Treaty rules on restrictive business practices[…] which prohibits practices such as price fixing and customer allocation."

74.     The DOJ announced their investigation into Defendants' unlawful conspiracy on February 19, 2009 with a released statement that "[t]he Antitrust Division is investigating the possibility of anticompetitive practices in the compressor industry… We are coordinating with other foreign competition authorities."

75.     Since that time, several Defendants have publicly confirmed the investigation as well as the receipt of grand jury subpoenas from the DOJ.  Whirlpool, for example, in a February 19, 2009 filing before the Securities and Exchange Commission ("SEC"), confirmed that its Brazilian subsidiary, Defendant Embraco, had been raided by Brazilian authorities; that its Italian subsidiary, the headquarters of the company's European operations, was raided by the EC; and that the Antitrust Division of the U.S. Department of Justice has issued grand jury subpoenas and requests for "documents relating to an antitrust investigation of the global compressor industry."

76.     Defendant Tecumseh confirmed in a statement on February 19, 2009 that it had received "a formal request for information from the secretariat of Economic Law of the Ministry of Justice of Brazil" related to its investigation of the Compressor industry. Defendant Tecumseh has also confirmed that the Antitrust Division of the U.S. Department of Justice has issued grand jury subpoenas, stating that the investigation was "related to a pricing issue."

77.     Defendant Danfoss confirmed that its headquarters in Nordborg, Denmark and its primary compressor manufacturing facility in Flensburg, Germany has been raided by the EC and that "several of Danfoss' companies in the USA were visited by the American competition authority," and that "the reason for the visits and the pending investigation is the suspicion of illegal pricing arrangements within the compressor market."

78.     Defendant Panasonic has likewise confirmed it has been contacted by the U.S. government about an investigation relating to Compressor pricing.

79.     Several individuals in Defendants' companies have also been targeted by antitrust authorities.  The Brazilian press has reported that Brazilian antitrust and law-enforcement authorities raided the Sao Carlos home of Gerson Verissimo, who was President of Defendant Tecumseh Brasil until 2008, and the Sau Paulo home of Paulo F.M.O. Periquito, who was President of Defendant Whirlpool's Latin American operations from 1997 through 2007, and was currently President of Whirlpool International.

80.     On February 26, 2009, Defendant Tecumseh disclosed that former President, CEO, and Director Todd Herrick and his son Kent Herrick, a current Board member and former Executive Vice President and Vice President of Global Business Development, "have not cooperated with the Company in its own investigation," and that "the Company believes that they also have refused to cooperate with the investigating antitrust authorities, despite the Company's request that they do so."  Defendant Tecumseh also disclosed that the conditional amnesty agreement with the DOJ entered on February 12, 2009 "specifically excludes Todd Herrick and Kent Herrick."

81.     To be granted amnesty from antitrust regulators in the United States, Europe, and Brazil, Defendant Tecumseh necessarily has (a) admitted to the existence of the conspiracy alleged herein, (b) admitted to participating in the conspiracy, and (c) provided sufficient information to identify others involved and their roles in the conspiracy.  According to DOJ guidelines, a corporate amnesty applicant "must admit its participation in a criminal antitrust violation involving price fixing, bid rigging, capacity restriction, or allocation of markets . . . before it will receive a conditional leniency letter. A company that . . . cannot produce any employees who will admit that the company entered into such an agreement generally has not made a sufficient admission of criminal antitrust violation to be eligible for leniency."  Similarly, for leniency by the EC, a company participant in a cartel "must provide evidence that enables the Commission to prove infringement."  Finally, for leniency from Brazil's Ministry of Justice – Secretariat of Economic Law, an applicant must provide authorities with "an admission of participation in the anticompetitive practice" and provide a "complete description of the anticompetitive practice, including identification of the other participants and the respective individual roles."

**Defendants' Conspiracy And Harms Caused To Plaintiff And The Classes**

82.     From as early as January 1, 1996 through the present, Defendants have entered into a continuing combination and conspiracy to unreasonably restrain trade and commerce.  Specifically, Defendants have conspired to fix, raise, maintain and stabilize prices of Compressors and Compressor Products in the United States; to restrict and limit the supply of Compressors and Compressor Products; and have combined and conspired

22

to allocate customers and markets in which the Compressors and Compressor Products are sold in the United States.

83.     Prior to the combination and conspiracy, Defendants were actual competitors in the Compressor and/or Compressor Products market.  Defendants shared a conscious commitment to a common scheme designed to achieve the unlawful objective of dividing the market for Compressors and/or Compressor Products by allocating customers and markets in which Compressors and/or Compressor Products were sold.

84.     In order to formulate and effectuate their combination and conspiracy, Defendants participated in meetings and conversations to discuss the prices and supply of Compressors and/or Compressor Products, agreed to manipulate the prices and supply of Compressors and/or Compressor Products sold throughout the United States and Class Jurisdictions, divided the U.S. market for Compressors and/or Compressor Products among themselves and their Co-Conspirators, sold Compressors and/or Compressor Products to customers throughout the United States at non-competitive prices, and provided false statements to the public to explain the increased prices.

85.     As a result of Defendants' unlawful conduct, prices for Compressors and Compressor Products were artificially raised, fixed, maintained and stabilized in the United States and Class Jurisdictions at a level higher than they would have been in the absence of the illegal conduct alleged in this complaint.

86.     The effect of Defendants' unlawful conduct is apparent in the Compressors market – a market that has not behaved as a competitive market free from collusion would have. For instance, pricing trends of Compressors provide strong evidence of the existence and effect of Defendants' conspiracy.   According to Producer

23

Price Index data published by the Bureau of Labor Statistics, the price of Compressors rose 9.5% between December 2004 and January 2005 followed by 21 months of very little variation.  Then again, between September 2006 and January 2007, prices rose 7.6 % with another extended period of flat prices extending to March 2008.  Overall, prices increased 28.6 % between December 2004 and 2008.

87.    This pattern of price changes is a powerful indicator of collusive pricing. As one commentator stated, "When firms are moderately patient, there is partially rigid pricing so the price function is a step function of cost in which case price is often unchanged but then experiences a large change. This also serves to distinguish collusion from competition."

88.    The rise has been facilitated through incremental but concurrent increases evidencing Defendants priced in parallel and did not engage in aggressive competition to gain market share.  In the fall of 2004 for instance, Defendants Whirlpool and Tecumseh acknowledged broad price increases as did at least one other manufacturer.  Defendants' prices have generally risen through the Class Period in a manner not consistent with the pricing of similar products, nor have the price increases been consistent with the cost trends in the industry.  Throughout the Class Period, Defendants have continued to enjoy healthy margins generally similar to each other.  Such are not characteristics of a market of free competition.

89.    Defendants' illegal combination and conspiracy in restraint of trade has exacted, and continues to exact, untold damages upon the market.  The global market for Compressors has been estimated to be approximately $21 billion in 2007.  The supra-competitive prices intended, charged, and accepted by Defendants for Compressors and

Compressor Products over the Class Period has resulted in billions of dollars in over-charges paid by purchasers, including Plaintiff and members of the Classes. One report in Brazil estimated damages in that country for 2008 alone at over $400 million dollars. Damages in the domestic market will be similarly astronomical – in one year, 2002, the U.S. Census estimated total domestic sales at almost $2.5 billion. Those sales multiplied over the 12 year conspiracy period mean that even the slightest of overcharge would result in staggering losses to purchasers of Compressors and Compressor products.

90. Defendants' conspiracy to fix, raise or maintain the price of Compressors and Compressor Products at artificial levels resulted in harm to Plaintiff and other members of the Classes alleged herein because it resulted in them paying higher prices for Compressors and Compressor Products than they would have had no conspiracy occurred.

91. There is a direct, measurable, and traceable correlation between the price of Compressors and the prices of Compressor Products such as refrigerators, freezers, and air-conditioners. The price of the former is a significant factor in the price of the latter. By some estimates, Compressor costs account for nearly one half of the cost for raw materials for air conditioners and for approximately one sixth of the total cost of refrigerators. Defendants' conspiracy to raise the prices of Compressors caused price increases in Compressor Products.

92. As a result of the conspiracy, the prices charged to Plaintiff and other Class Members for Compressors and Compressor Products were substantially and artificially inflated. An overcharge imposed by a monopolist at the top of a chain of distribution is generally there on imposed at every subsequent level below. Furthermore,

in competitive markets such as these, an artificial overcharge equal to nearly all, or more than all, of the "overcharge" at higher levels of the distribution chain is reflected in the price of goods purchased by consumers as well as the products in which such goods are important components.

93.     Furthermore, as explained above, many Defendants are manufacturers of both Compressors and Compressor Products.  Thus, by fixing prices of Compressors, Defendants also fixed the prices of Compressor Products thereby imposing the overcharge on end-purchasers.

94.     Defendants' unlawful conspiracy has had and continues to have at least the following effects:

    a.     Prices paid by Plaintiff and members of the Classes for Compressors and/or Compressor Products were fixed, stabilized, and maintained at supracompetitive levels in the United States and each of its states and territories.

    b.     Customers and markets for Compressors and/or Compressor Products were allocated among Defendants and their co-conspirators;

    c.     Plaintiff and members of the Classes paid more for Compressors and/or Compressor Products than they would have in a competitive marketplace;

    d.     Price competition in the sale of Compressors and/or Compressor Products was restrained, suppressed and eliminated in the United States and each of its states and territories; and

    e.     As a direct and proximate result of the illegal conspiracy, Plaintiff and members of the Classes have been injured and financially damaged in their businesses and property, in amounts to be determined.

## VIOLATIONS ALLEGED

## COUNT ONE
## VIOLATION OF SECTION ONE OF THE SHERMAN ACT (15 U.S.C. §1)

95.     Plaintiff hereby incorporates by reference each of the preceding paragraphs as if fully set forth herein.

96.     Defendants' anticompetitive activity as described above violates Section One of the Sherman Act (15 U.S.C. §1).  As a direct and proximate result of this violation of law, Plaintiff and the members of the Nationwide Class have been, and continue to be, damaged in their respective businesses and property by paying higher prices to purchase Compressors and/or Compressor Products than they would absent Defendants' conduct. This injury is of the type that the Sherman and Clayton Acts were designed to prevent, flows directly from Defendants' conduct, and flows from that which makes Defendants' conduct unlawful.  Accordingly, Plaintiff and the Nationwide Class, pursuant to Rule 57 of the Rules of Civil Procedure and 18 U.S.C. § 2201(a), seek a declaratory judgment that Defendants' conduct in seeking to prevent competition as described herein violates Section 1 of the Sherman Act.  Plaintiff and the Nationwide Class further seek injunctive relief pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, and other applicable law, to correct the anticompetitive market effects caused by Defendants' unlawful conduct and to assure that similar anti-competitive conduct does not occur in the future.

**COUNT TWO**
**VIOLATION OF STATE ANTITRUST STATUTES**

97.     Plaintiff hereby incorporates by reference each of the preceding paragraphs as if fully set forth herein.

98.     Defendants' anticompetitive acts described above are in violation of the following state antitrust statutes.

99.     Defendants have entered into an unlawful agreement in restraint of trade in violation of Arizona Revised Stat. § 44-1401, *et seq.*

27

100.    Defendants have entered into an unlawful agreement in restraint of trade in violation of Cal. Bus. & Prof. Code § 16700, *et seq.*

101.    Defendants have entered into an unlawful agreement in restraint of trade in violation of D.C. Code Ann. § 28-4503, *et seq.*

102.    Defendants have entered into an unlawful agreement in restraint of trade in violation of Iowa Code § 553.1, *et seq.*

103.    Defendants have entered into an unlawful agreement in restraint of trade in violation of Kan. Stat. Ann. § 50-101, *et seq.*

104.    Defendants have entered into an unlawful agreement in restraint of trade in violation of Me. Stat. Ann. 10, § 1101, *et seq.*

105.    Defendants have entered into an unlawful agreement in restraint of trade in violation of Mich. Comp. Laws Ann. § 445.773, *et seq.*

106.    Defendants have entered into an unlawful agreement in restraint of trade in violation of Minn. Stat. § 325D.52, *et seq.*

107.    Defendants have entered into an unlawful agreement in restraint of trade in violation of Neb. Rev. Stat. Ann. § 598A., *et seq.*

108.    Defendants have entered into an unlawful agreement in restraint of trade in violation of Nev. Rev. Stat. Ann. § 59-801, *et seq.*

109.    Defendants have entered into an unlawful agreement in restraint of trade in violation of N.M. Stat. Ann. § 57-1, *et seq.*

110.    Defendants have entered into an unlawful agreement in restraint of trade in violation of N.C. Gen. Stat. § 75-1, *et seq.*

111.    Defendants have entered into an unlawful agreement in restraint of trade in violation of N.D. Cent. Code § 51-08.1-01, *et seq.*

112.    Defendants have entered into an unlawful agreement in restraint of trade in violation of P.R. Laws Ann. tit. 10, § 257, *et seq.* and P.R. Laws Ann. tit. 32, § 5141, *et seq.*

113.    Defendants have entered into an unlawful agreement in restraint of trade in violation of S.D. Codified Laws Ann. § 37-1, *et seq.*

114.    Defendants have entered into an unlawful agreement in restraint of trade in violation of Tenn. Code Ann. § 47-25-101, *et seq.*

115.    Defendants have entered into an unlawful agreement in restraint of trade in violation of Vt. Stat. Ann. 9 § 2453, *et seq.*

116.    Defendants have entered into an unlawful agreement in restraint of trade in violation of W. Va. Code § 47-18-1, *et seq.*

117.    Defendants have entered into an unlawful agreement in restraint of trade in violation of Wis. Stat. § 133.01, *et seq.*

118.    Plaintiff and members of the State-Specific Classes have been injured in their business and property by reason of Defendants' unlawful combination, contract, conspiracy and agreement and acts in furthers thereof.  Plaintiff and members of the State-Specific Classes have paid more for Compressors and/or Compressor Products than they otherwise would have paid for them in the absence of Defendants' conduct.  The injury is of the type the antitrust laws listed above were designed to prevent and flows directly from Defendants' conduct and from that which makes Defendants' conduct unlawful.  Accordingly, Plaintiff and members of the State-Specific Classes who

purchased a Compressor and/or Compressor Product in any of the states listed above seek all appropriate relief as provided for by the applicable state law, including but not limited to damages, to be trebled or otherwise increased where permitted by a particular state's antitrust law, and costs of suit, including reasonable attorneys' fees, to the extent permitted by the state's antitrust laws.

**COUNT THREE**
**VIOLATION OF STATE CONSUMER PROTECTION AND UNFAIR**
**COMPETITION STATUTES**

119.    Plaintiff hereby incorporates by reference each of the preceding paragraphs as if fully set forth herein.

120.    Defendants have engaged in unfair competition or unfair, unconscionable, deceptive, and/or fraudulent acts or practices in violation of the following state consumer protection and unfair competition statutes.

121.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ark. Code § 4-88-101, *et seq.*

122.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*

123.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of D.C. Code § 28-3901, *et seq.*

124.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Fla. Stat. § 501.201, *et seq.*

125.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Kan. Stat. § 50-623, *et seq.*

126.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 5 Me. Rev. Stat. tit. § 205-A, *et seq.*

127.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mass. Gen. L. Ch. 93A, *et seq.*

128.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mich. Comp. Laws Ann. § 445.901, *et seq.*

129.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. § 59-1601, *et seq.*

130.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Nev. Rev. Stat. § 598.0903, *et seq.*

131.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat. § 358-A:1, *et seq.*

132.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. Stat. § 57-12-1, *et seq.*

133.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq.*

134.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1, *et seq.*

135.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. Gen. Laws § 6 13.1-1, *et seq.*

136.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 9 Vt. Stat. Ann. § 2451, *et seq.*

137.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Wisc. Stat. § 100.20, *et seq.*

138.    Plaintiff and members of the State-Specific Classes have been injured in their business and property by reason of Defendants' unfair, anticompetitive, or deceptive acts or practices. Plaintiff and members of the State-Specific Classes have paid more for Compressors and/or Compressor Products than they otherwise would have paid for them in the absence of Defendants' conduct. The injury is of the type the consumer protection and unfair competition statutes listed above were designed to prevent and flows directly from Defendants' unlawful conduct. Accordingly, Plaintiff and members of the State-Specific Classes who purchased a Compressor and/or Compressor Product in any of the states listed above seek all appropriate relief as provided for by the applicable state law, including but not limited to actual damages, injunctive relief, reasonable attorneys' fees, and equitable relief, such as restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by Defendants as a result of their unlawful conduct.

**COUNT FOUR**
**UNJUST ENRICHMENT**

139.    Plaintiff hereby incorporates by reference each of the preceding paragraphs as if fully set forth herein.

140.    Defendants have been unjustly enriched through overpayments by Plaintiff and members of the Classes and the resulting profits.

141.    Under common law principles of unjust enrichment, Defendants should not be permitted to retain the benefits conferred via overpayments by Plaintiff and members of the Classes.

142.    Plaintiff and all members of the Nationwide Class seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and members of the Nationwide Class may seek restitution.

## FRAUDULENT CONCEALMENT

140.    Plaintiff hereby incorporates by reference each of the preceding paragraphs as if fully set forth herein.

141.    Throughout the Class Period, Defendants and their Co-Conspirators engaged in a successful, illegal price-fixing conspiracy that was by its nature self-concealing and further effectively, affirmatively, and fraudulently concealed their unlawful combination and conspiracy, and acts in furtherance thereof from Plaintiff and the members of the Classes.

142.    Although Plaintiff exercised due diligence throughout the Class Period, he could not have discovered Defendants' unlawful combination and conspiracy at an earlier date because of Defendants' effective, affirmative, and fraudulent concealment of activities.  Defendants' wrongful conduct was carried out in part through means and methods that were designed and intended to avoid detection, and which in fact, successfully precluded detection.

143.    Plaintiff has exercised due diligence by promptly investigating the facts giving rise to the claims asserted herein upon having reasonable suspicion of the existence of Defendants' conspiracy, and by seeking discovery as to the matters asserted herein, to the extent permitted by law.

## JURY TRIAL DEMAND

144.   Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all claims asserted in this Complaint so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follow:

A.   That the Court determine that the Sherman Act, state antitrust law, and state consumer protection and/or unfair competition law claims alleged herein may be maintained by the classes proposed herein under Rules 23(a) and (b)(2) – (3) of the Federal Rules of Civil Procedure, that Plaintiff may be certified as class representative, and that Plaintiff's counsel be appointed as counsel for these Classes;

B.   That Defendants and Co-Conspirators, by participating in the contract, combination, and conspiracy alleged herein be adjudged and decreed to have violated Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, as alleged in Count I;

C.   That Defendants and Co-Conspirators, by participating in the contract, combination, and conspiracy alleged herein be adjudged and decreed to have violated the state antitrust laws as alleged in Count II;

D.   That Defendants and Co-Conspirators, by participating in the contract, combination, and conspiracy alleged herein be adjudged and decreed to have violated the state consumer protection and unfair competition laws as alleged in Count III;

E.   That Defendants and Co-Conspirators, by participating in the contract, combination, and conspiracy alleged herein be adjudged and decreed to have been unjustly enriched by their unlawful conduct as alleged in Count IV;

F.   That Defendants, their Co-Conspirators, successors, parents, transferees, assigns, subsidiaries, affiliates, and the officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on behalf of Defendants, be permanently enjoined and restrained from continuing, maintaining, or renewing the conspiracy, combination, contract, or agreement alleged herein, or from entering into any other contract, conspiracy or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect as provided by Section 16 of the Clayton Act, 15 U.S.C. § 26;

G.   That Plaintiff and the relevant Class recover damages, as provided by the state antitrust laws and state consumer protection and unfair competition

laws listed in Counts II and III, and that a joint and several judgment be entered in favor of Plaintiff and the Classes and against Defendants in an amount to be trebled or otherwise increased in accordance with such laws, except in New York where treble damages are expressly waived;

H.     That Plaintiff and the relevant Class obtain any penalties, punitive or exemplary damages, and/or full consideration, where the laws of the respective states identified herein so permit;

I.     That Plaintiff and the relevant Class recover damages and/or all other available monetary and equitable remedies under the state consumer protection and/or unfair competition laws identified above;

J.     That Plaintiff and the relevant Class be awarded restitution, including disgorgement of profits obtained by Defendants as a result of their acts of unfair competition and acts of unjust enrichment;

K.     That Plaintiff and the relevant Class recover pre-judgment and post-judgment interest as permitted by law, and that such interest be awarded at the highest legal rate from and after the date of service of the initial complaint in this action;

L.     That Plaintiff and the relevant Class recover their costs of the suit, including attorneys' fees, as provided by law; and

M.     That Plaintiff and the relevant Class have such other, further, and different relief as the case may require and the Court may deem just and proper under the circumstances.

July 9, 2009                              ___s/ Marshall J. Widick_____

                                          Marshall J. Widick  (P53942)
                                          Andrew Nickelhoff (P37990)
                                          SACHS WALDMAN PC
                                          1000 Farmer St.
                                          Detroit, MI  48226
                                          Tel:  (313) 965-3464
                                          Fax: (313) 965-4602
                                          mwidick@sachswaldman.com
                                          anickelhoff@sachswaldman.com

                                          *Counsel for Plaintiff*

Manfred P. Muecke
BONNETT, FAIRBOURN,
   FRIEDMAN & BALINT, P.C.
600 West Broadway
Suite 900
San Diego, CA 92101
Tel:  (619) 756-7748
Fax: (602) 274-1199

Frank J. Balint
BONNETT, FAIRBOURN,
   FRIEDMAN & BALINT, P.C.
2901 N. Central Ave.
Suite 1000
Phoenix, AZ  85012
Tel:  (602) 274-1100
Fax: (602) 274-1199

Ian Otto
STRAUS & BOIES, LLP
Timothy D. Battin
Joshua Raynes
4041 University Dr.
5th Floor
Fairfax, VA  22030
Tel:  (703) 764-8700
Fax: (703) 764-8704
iotto@straus-boies.com

Mark Schirmer
STRAUS & BOIES, LLP
1661 International Drive
Suite 400
Memphis, TN  38120
Tel:  (901) 818-3146

Daniel E. Birkhaeuser
BRAMSON, PLUTZIK, MAHLER
   & BIRKHAEUSER, LLP
2125 Oak Grove Rd.
Suite 120
Walnut Creek, CA  94598
Tel:  (925) 945-0200

Marc G. Reich

36

REICH RADCLIFFE, LLP
4675 MacArthur Court
Suite 550
Newport Beach, CA  92660
Tel:  (949) 975-0512

Jeffrey A. Bartos
GUERRIERI, EDMOND,
    CLAYMAN & BARTOS, P.C.
1625 Massachusetts Ave., N. W.,
Suite 700
Washington, D.C. 20036
Tel:  (202) 624-7400

John D. Mills
LAW OFFICE OF JOHN D. MILLS
1415 Dean St. Suite 105
Ft. Myers, FL  33901
Tel:  (239) 337-3535

James Linnan
LINNAN & FALLON, LLP
61 Columbia Street
Suite 300
Albany, NY  12210
Tel:  (518) 449-5400

James Wyatt
WYATT & BLAKE, LLP
435 E. Morehead St.
Charlotte, NC  28202
Tel:  (704) 331-0767

Eric J. Pickar
BANGS, MCCULLEN, BUTLER,
    FOYE & SIMMONS, LLP
333 West Blvd, Suite 400
P.O. Box 2670
Rapid City, SD  57709
Tel:  (605) 343-1040

Michael Simon
FRANKOVITCH, ANETAKIS,
    COLANTONIO & SIMON
337 Penco Rd.

Weirton, WV  26062
Tel:  (304) 723-5892

Susan LaCava
SUSAN LACAVA, SC
23 N. Pinckney St.
Suite 300
Madison, WI  53703
Tel:  (608) 258-1335


*Of Counsel*